UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMAR E. OWENS | CIVIL ACTION |
| VERSUS | NO. 19-10816 |
| DARRYL VANNOY (WARDEN) | SECTION "G"(2) |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

I.   FACTUAL BACKGROUND

The petitioner, Jamar E. Owens, is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On March 2, 2012, Owens and two co-defendants, Everett Williams and Isaac S. Williams III, were charged in Jefferson Parish in a nine-count

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 3.

bill of information.³ Multiple amendments to the bill of information resulted in Owens and Everett Williams being charged with one count of armed robbery, one count of attempted armed robbery and one count of aggravated battery.⁴ Owens also separately was charged with two counts of possession of a weapon by a convicted felon. Everett Williams also was charged with three counts as a felon in possession of a weapon. Isaac Williams ultimately was charged with one count of conspiracy to commit armed robbery. The Louisiana Fifth Circuit Court of Appeal summarized the facts established at trial in relevant part as follows:

> This case arises from a robbery and shooting that occurred on January 18, 2012, at a residence in Harvey on the west bank of Jefferson Parish. At the time of the incident, Vincent Davis lived at the house with his mother, Alicia Bailey, and his grandmother, Anna Davis. Donika Jackson, Mr. Davis's girlfriend, was also present at the house at the time of the occurrence. Each of these four individuals testified at trial.
>
> During the evening hours of January 18, 2012, Mr. Davis and Ms. Jackson were watching television in his bedroom. At about 8 or 9 p.m., Mr. Davis received a phone call from "Mar," subsequently identified as defendant Jamar Owens, who wanted to buy some movies from him. At trial, Mr. Davis explained that he earned money by selling black market DVDs and CDs, that he usually sold eight DVDs for twenty dollars, and that he had conducted business with defendant on one previous occasion.
>
> After the phone call from defendant, Mr. Davis left the residence to go buy some food. However, when he went outside, defendant was waiting for him. The two engaged in conversation, and defendant gave Mr. Davis twenty dollars for the DVDs. Although it appeared that defendant was alone, Mr. Davis noticed a car parked down the street. Mr. Davis recognized the car because he had observed defendant in the car previously, along with the other men involved in the incident.

---

³St. Rec. Vol. 1 of 7, Original Bill of Information, 3/2/12; Amended Bill of Information, 3/29/12; Amended Bill of Information, 1/18/13; Amended Bill of Information, 2/22/13 (further amended on 5/13/13 and 6/14/13).

⁴St. Rec. Vol. 1 of 7, Amended Bill of Information, 2/22/13 (further amended on 5/13/13 and 6/14/13).

> While still outside of the residence, defendant produced a gun, placed it in Mr. Davis's face, and apparently took back the money he had given Mr. Davis for the movies. Defendant struck Mr. Davis in the head with a gun, and thereafter, a second perpetrator hit Mr. Davis. These two individuals, along with a third attacker, then forced Mr. Davis inside his house and made him lie on the floor in front of the doorway by the den area. The perpetrators demanded money, and according to Mr. Davis, they took "some money" from him, although he did not know how much.
>
> At some point during this encounter, a dark-skinned black man, subsequently identified as co-defendant Everett Williams, entered Mr. Davis's bedroom, placed a "big gun" to Ms. Jackson's head, told her to get up, and demanded more money. Defendant also came into the bedroom and placed a gun to Ms. Jackson's head. After the two repeatedly questioned Ms. Jackson about the money, defendant returned to the den area where Mr. Davis was still lying on the floor. Defendant and the third perpetrator kept hitting Mr. Davis in the head while Williams searched the bedroom.
>
> Ms. Bailey and Ms. Davis, who were in their bedrooms, heard a noise and went to the back of the house to investigate. Upon seeing the two women, defendant and the other perpetrator in the room with Mr. Davis ran out the door. Williams then emerged from Mr. Davis's bedroom with a gun and fired two shots as he ran from the house. The gunfire hit and injured Ms. Bailey and Mr. Davis. After Williams fled, Ms. Jackson called 9-1-1.

State v. Owens, 151 So.3d 86, 87–89 (La. App. 5th Cir. 2014); State Record Volume 5 of 7, Louisiana Fifth Circuit Court of Appeal Opinion, 14-KA-41, pages 3–6, September 24, 2014.

Owens and Everett Williams were tried before a jury on July 22 through 24, 2013, and each were found guilty as charged of armed robbery, attempted armed robbery, aggravated battery and the separate counts of possession of a weapon by a convicted felon.[5] At an

---

[5] St. Rec. Vol. 1 of 5, Jury Verdict, 7/24/13; Trial Minutes, 7/22/13; Trial Minutes, 7/23/13; Trial Minutes, 7/24/13; St. Rec. Vol. 4 of 7, Trial Transcript, 7/23/13; St. Rec. Vol. 5 of 7, Trial Transcript (continued), 7/23/13; Trial Transcript, 7/24/13. The record reflects that trial originally was called on June 18, 2013, and a mistrial was declared during voir dire. St. Rec. Vol. 1 of 7, Trial Minutes, 6/18/13.

3

August 16, 2013 hearing, the state trial court denied Owen's motion for new trial.[6] After waiver of legal delays, the court that day sentenced him to 99 years in prison for armed robbery, 45 years in prison for attempted armed robbery, 10 years in prison for aggravated battery and 10 years in prison for each of the two counts of possession of a weapon by a convicted felon.[7] The court ordered the sentences to run concurrently and all but the aggravated battery charge to be served without benefit of parole, probation or suspension of sentence.

On direct appeal, Owen's appointed counsel asserted two errors:[8] (1) the state trial court erroneously denied the motion for new trial based on the prosecutor's closing argument; and (2) the state trial court erroneously denied a motion in limine to exclude the recorded telephone conversation and erroneously denied the motion for new trial based on the same ground.

On September 24, 2014, the Louisiana Fifth Circuit affirmed Owens's convictions and sentences finding the claims meritless.[9] However, on its errors patent review, the court

---

[6]St. Rec. Vol. 1 of 7, Sentencing Minutes, 8/16/13; Motion for New Trial, 8/14/13; St. Rec. Vol. 5 of 7, Sentencing Transcript, 8/16/13.

[7]St. Rec. Vol. 1 of 7, Sentencing Minutes, 8/16/13; St. Rec. Vol. 5 of 7, Sentencing Transcript, 8/16/13.

[8]St. Rec. Vol. 5 of 7, Appeal Brief, 14-KA-0041, 2/10/14. Owens was granted leave to file a supplemental brief but he failed to do so. St. Rec. Vol. 5 of 7, Motion for Leave, 3/10/14; 5th Cir. Order, 14-KA-41, 3/10/14.

[9]Owens, 151 So.3d at 86; St. Rec. Vol. 5 of 7, 5th Cir. Opinion, 14-KA-41, 9/24/14.

4

partially remanded the matter for the state trial court to correct the uniform commitment order. The state trial court complied on October 22, 2014.[10]

On October 2, 2015, the Louisiana Supreme Court denied Owens's related writ application without stated reasons.[11] Owens's convictions and sentences became final ninety (90) days later, on December 31, 2015, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999), cert. denied, 529 U.S. 1099 (2000) (period for filling for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

Six months and one week later, on July 7, 2016, Owens submitted to the state trial court an application for post-conviction relief asserting four claims:[12] (1) he was denied effective assistance of counsel based on conflict of interest; (2) he was denied effective assistance of counsel when counsel failed to call the victim's father at trial; (3) his confrontation rights were violated when the State's witnesses testified to information provided by a witness who was present; and (4) prosecutorial and judicial misconduct occurred when other crimes evidence was admitted at trial.

---

[10]St. Rec. Vol. 1 of 7, Corrected Sentencing Minutes, 10/22/14.

[11]State v. Owens, 178 So.3d 582 (La. 2015); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2014-KO-2252, 10/2/15; La. S. Ct. Writ Application, 14-KO-2252, 10/29/14 (dated 10/22/14); St. Rec. Vol. 1 of 7, La. S. Ct. Letter, 2014-KO-2252, 10/29/14.

[12]St. Rec. Vol. 1 of 7, Application for Post-Conviction Relief, 7/20/16 (attached memorandum dated 7/7/16).

On October 5, 2016, the state trial court denied Owens's application finding no merit in the first two claims and the remaining two claims procedurally barred from post-conviction review under La. Code Crim. P. art. 930.4(B).[13] The court also noted that Owens's fifth claim was factually inaccurate and unsupported.

On November 16, 2016, the Louisiana Fifth Circuit denied Owens's related writ application finding no error in the state trial court's ruling.[14] On April 2, 2018, the Louisiana Supreme Court denied Owens's subsequent writ application under Strickland v. Washington, 466 U.S. 668 (1984) and as procedurally barred under La. Code Crim. P. art. 930.4(B).[15]

## II.     FEDERAL HABEAS PETITION

On May 30, 2019, the clerk of this court filed Owens's federal habeas corpus petition in which he asserted the following grounds for relief:[16] (1) the petitioner was denied a fair trial because of prosecutorial misconduct when the prosecutor shifted the burden during closing arguments; (2) the state trial court abused its discretion when it denied petitioner's Confrontation Clause objection to the admission of recorded statements made during a telephone call from the jail; (3) he was denied effective assistance of counsel based on a conflict of interest; (4) his confrontation rights were violated when several state witnesses

---

[13]St. Rec. Vol. 2 of 7, Trial Court Order, 10/5/16; State's Statement of the Case, 9/26/16.

[14]St. Rec. Vol. 2 of 7, 5th Cir. Order, 16-KH-632, 11/16/16; St. Rec. Vol. 7 of 7, 5th Cir. Writ Application, 16-KH-632 (unfiled copy).

[15]State ex rel. Owens v. State, 2018 WL 1611284, at *1 (La. Apr. 2, 2018); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2016-KH-2236, 4/2/18; St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 16-KH-2236, 12/15/16 (dated 12/7/16).

[16]Rec. Doc. No. 1.

testified to information provided by a witness who was not present; and (5) prosecutorial and judicial misconduct occurred when other crimes evidence was admitted at trial. In his supporting memorandum, Owens also claims with little detail that he lost some of his legal paperwork in November 2017, and requests that the court excuse the untimely filing of his federal petition.[17]

The State filed a response in opposition to Owens's federal petition asserting that the petition is time-barred and that Owens failed to establish his entitlement to equitable tolling.[18] The State also claims that the Louisiana State Penitentiary has no administrative grievance or property claims from Owens in the prison system despite Owens's claim that he wrote prison officials to locate the allegedly lost paperwork.[19]

In his reply to the State's opposition, Owens reasserts his request for equitable tolling for the time he spent attempting to locate his lost paperwork after November 23, 2017.[20] He claims that the paperwork was misplaced when he was transferred to administrative segregation, which he asserts was outside of his control. He claims that after the paperwork was returned to him, he was able to file his federal petition.

---

[17] Rec. Doc. No. 1-1, p.2; Rec. Doc. No. 1-2, pp. 3–5.

[18] Rec. Doc. No. 9.

[19] Rec. Doc. No. 9-1.

[20] Rec. Doc. No. 11.

III. GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996,[21] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to this petition deemed filed on May 30, 2019.[22]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419–20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[21]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[22]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk filed Owens's petition on May 30, 2019, when it was received by electronic mail along with his deficient pauper application and other attachments. The official stamp of the prison legal programs department reflects that Owens presented his original petition to prison officials on May 30, 2019, for electronic mailing to federal court. Rec. Doc. No. 2, p. 3; Rec. Doc. No. 4-1, p. 3.

The State asserts that Owens's federal petition was <u>not</u> timely filed. For the following reasons, Owens's petition should be dismissed with prejudice as time-barred.

## IV. STATUTE OF LIMITATIONS

The AEDPA requires that a Section 2254 petition must ordinarily be filed within one year of the date the conviction became final.[23] <u>Duncan v. Walker</u>, 533 U.S. 167, 179-80 (2001). Owens's conviction was final on December 31, 2015, when the time for filing for a writ of certiorari in the United States Supreme Court expired after his state court direct appeal. Applying Section 2244 literally, Owens had one year from finality of his conviction, until Tuesday, January 3, 2017,[24] to file his federal habeas corpus petition, which he did not

---

[23]The statute of limitations provision of the AEDPA in 28 U.S.C. § 2244(d) provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
A.   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
D.   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

[24]The last day of the one-year period was Saturday, December 31, 2016. The final day therefore fell on the next business day, Tuesday, January 3, 2017, because Monday, January 2, 2017, was a state holiday. <u>See</u> La. Rev. Stat. § 1:55(A)(4) (declaring that when January 1 falls on a Sunday, the next day is a holiday); La. Code Crim. P. art. 13 (when the final day of a period is a Saturday or Sunday, the end of the period falls to the next business day); Fed. R. Civ. P. 6.

do. His petition must be dismissed as untimely, unless the one-year statute of limitations was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

### A. NO EQUITABLE TOLLING

First, the United States Supreme Court has held that AEDPA's one-year statute of limitations period in Section 2244(d)(1) may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist that prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations in which the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 544 U.S. at 418–19; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

Owens has asserted no reason, and I can find none, that might constitute rare or exceptional circumstances why the one-year statute of limitations period should be equitably tolled in his case. Broadly construed, Owens's pleadings assert that his delay should be equitably tolled because he lost some of his paperwork on or about November 23, 2017, and attempted thereafter to retrieve it from prison officials to no avail. However, the loss of legal paperwork at a prison is not an extraordinary circumstance for purposes of equitable tolling. Powell v. Kelly, 2007 WL 1112613, at *3–4 (S.D. Miss. Apr. 10, 2007) (Order adopting Report and Recommendation).

In Powell, the court considered the petitioner's plea for equitable tolling on grounds that his legal paperwork was lost by prison officials. Id. at *1. The petitioner was a Mississippi prisoner who was transferred between the county and state correctional systems without his legal paperwork. Although Powell claimed to have requested that his property be returned on numerous occasions, the prison systems had received only one administrative grievance almost one year after his initial transfer. Although prison records indicated that all of his property had been sent to his facility and stored, Powell continued to claim he had not received his legal materials. The federal district court denied equitable tolling for the untimely filing of his federal petition. The court considered that Powell spent more than one year attempting to retrieve his legal materials before finally filing for state court post-conviction review and allowed an additional four months to pass after state review was completed before filing his federal petition. The court concluded that "[h]e had over a year from the time he originally lost this paperwork until his AEDPA deadline ended; yet, he chose to continue to search for his paperwork rather than get new copies and new research. This is unreasonable when a statute of limitations is running against a prisoner's claims." Id. at *4. The court found that the petitioner lacked the "'diligence and alacrity' required to avail himself of the equitable tolling doctrine." Id. at *4 (quoting Melancon v. Kaylo, 259 F.3d 401, 408 (5th Cir. 2001)).

In a similar way, Owens has failed to establish that he actually lost his paperwork or that he made a diligent effort to assert his rights. Owens bases his request for equitable tolling simply on the loss of his paperwork and the time allegedly spent to look for them. He does

11

not indicate that, between November 23, 2017, and May 30, 2019, the date he filed his federal petition, he made any effort to obtain copies of the documents from the state courts or any other source, except to write to prison officials. See id. at *4 (prisoner could obtain copies from the courts rather than search for lost documents). Despite the alleged extended and unsuccessful search, he was able to file his fully briefed federal petition on May 30, 2019, accompanied by 102 pages of exhibits, including 96 pages of pleadings and rulings from his state appellate and post-conviction review. Owens clearly had more than sufficient documentation in his possession to prepare and submit his federal petition, despite his alleged failure to locate other documents he claims were still missing as late as and after January 29, 2019. A prisoner is not entitled to equitable tolling based on lost legal paperwork when he is able to file his federal petition without the lost documents. Dugas v. Cain, 2010 WL 2816247, at *6–7 (W.D. La. May 25, 2010), report and recommendation adopted, 2010 WL 2836278, at *1 (W.D. La. Jul. 15, 2010); Id. at *4.

To support his request for equitable tolling, Owens submitted three undated documents in which he purports to have requested assistance from officials at the Louisiana State Penitentiary to locate his paperwork, which apparently included police reports and unspecified copies from his trial record and attorney's file.[25] Owens claims that the documents were dated "11-23-17, 1-29-19 and a third request," and establish that he "has not

---

[25]Rec. Doc. No. 1-2, pp. 3–5.

had his legal work since November 23, 2017."[26] However, unlike the petitioner in Powell, the Louisiana State Penitentiary has no complaints or requests in the system regarding Owens's allegedly lost paperwork.[27] This lends little if any credibility to Owens's claim that he actually lost or diligently searched for lost records at the prison.

In fact, in his reply to the State's opposition, Owens for the first time suggests that he located his paperwork and "[o]nly after it was returned was he able to litigate with the assistance of inmate counsel his claims into the federal district court . . . ."[28] This assertion contradicts Owens's earlier allegations that as late as January 29, 2019, or even up to the time of filing this petition,[29] he was searching for his lost paperwork needed to file his federal petition.[30]

Owens provides no indication when he allegedly located the paperwork. The court cannot determine if equity is due without knowing when the alleged "lost document" impediment, if any, was lifted or how much time passed afterwards. See Smith v. Johnson, 227 F.3d 260 (5th Cir. 2000) (equitable tolling for confiscated legal materials not available once the impediment was removed).

---

[26] Rec. Doc. No. 1-1, p. 2 n.1.

[27] Rec. Doc. No. 9-1.

[28] Rec. Doc. No. 11, p. 8.

[29] Rec. Doc. No. 1-2, p. 1.

[30] Rec. Doc. No. 1-1, p. 2; Rec. Doc. No. 1-2, pp. 3–5.

Owens simply has not demonstrated diligent pursuit of his rights or that the allegedly lost paperwork constituted an extraordinary circumstance or impediment to his ability to file his federal habeas corpus petition in a timely manner. See Hatcher v. Quarteman, 305 F. App'x 195, 196 (5th Cir. 2008) (for purposes of equitable tolling, inability to obtain copies of trial counsel's file was not an impediment since petitioner was able to file a federal petition without the documents, albeit untimely). For these reasons, Owens has not met his burden of proving his entitlement to equitable tolling because "some extraordinary circumstance stood in his way." Pace, 540 U.S. at 418.

The record does not establish any other circumstances that might fit the restrictive boundaries of "exceptional circumstances" described in binding precedent to warrant equitable tolling in this case. See Holland v. Florida, 560 U.S. 631, 651–54 (2010) (equitable tolling would be warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests timely to file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); Hardy v. Quarterman, 577 F.3d 596, 599–600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert.

denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period). Owens is not entitled to equitable tolling of the one-year AEDPA statute of limitations.

### B. NO STATUTORY TOLLING

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1. The Supreme Court clearly has described this provision as a tolling statute. Duncan, 533 U.S. at 175–78.

The decisions of the Fifth Circuit and other federal courts have held that, because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926, at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp. 2d 771, 771–72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306–07 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384–85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings filed by a prisoner. Causey v. Cain, 450 F.3d 601, 604–05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219–20

(2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, 2001 WL 995164, at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686–88 (5th Cir. 2005).

In this case, the one-year AEDPA statute of limitations began to run on January 1, 2016, the day after Owens's conviction was final under federal law. The period ran uninterrupted for 188 days, until July 7, 2016, when Owens submitted his state court application for post-conviction relief. This state court proceeding remained pending and tolled the one-year AEDPA filing period until April 2, 2018, when the Louisiana Supreme Court denied Owens's related writ application. The one-year AEDPA statute of limitations began to run again on April 3, 2018, and continued to run uninterrupted for the remaining 177 days, until September 26, 2018, when it expired. Owens had no properly filed

17

application for state post-conviction relief or other collateral review pending during that time period to toll the AEDPA one-year statute of limitations.

Owens's federal petition was filed under the mailbox rule on May 30, 2019, which was more than eight months after the AEDPA one-year filing period expired on September 26, 2018. His federal petition was not timely filed and must be dismissed with prejudice for that reason.[31]

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Jamar E. Owens's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

---

[31] Owens has asserted no other excuse to avoid the expiration of the AEDPA limitations period. He has not asserted his actual innocence or brought no new, reliable evidence to meet the high burden set forth in McQuiggin v. Perkins, 569 U.S. 383 (2013). Furthermore, the holding in Martinez v. Ryan, 566 U.S. 1 (2012), is not relevant to this timeliness discussion. In Martinez, the Supreme Court held that a procedural bar imposed by state courts "'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" Trevino v. Thaler, 569 U.S. 413, 429 (2013) (quoting Martinez, 566 U.S. at 13). The state courts did not procedurally bar Owens's ineffective assistance of counsel, and instead denied them as meritless under Strickland. This dismissal is based not on a state procedural bar but on Owens's failure to timely file his federal habeas petition. The Martinez and Trevino decisions do not address or excuse the untimely filing of a federal habeas petition. See Arthur v. Thomas, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the Martinez rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); Smith v. Rogers, 2014 WL 2972884, at *1 (W.D. La. Jul. 2, 2014); Falls v. Cain, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report and Recommendation). Martinez and Trevino also are not new rules of constitutional law made retroactive on collateral review to start a new one-year statute of limitations period under the AEDPA. See In re Paredes, 587 F. App'x 805, 813 (5th Cir. Oct. 25, 2014) (". . . the Supreme Court has not made either Martinez or Trevino retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); Adams v. Thaler, 679 F.3d 312, 322 n.6 (5th Cir. 2012). Neither Martinez nor Trevino provide equitable or statutory relief from Owens's untimely federal filing.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[32]

New Orleans, Louisiana, this ___18th___ day of November, 2019.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[32]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.